## SUPERIOR COURT OF BALTIMORE CITY

Filed August 6, 1900.

MARY E. POLK AND LUCIUS C. POLK, HER HUSBAND, AND GABRIEL CLARK POLK

VS.

HELEN A. LINTHICUM AND GABRIEL D. CLARK, JR., EXECUTORS, AND HELEN A. LINTHICUM AND J. CHARLES LINTHICUM.

*James P. Gorter* and *H. Arthur Stump* for appellants.

*Thomas R. Clendinen* and *J. Charles Linthicum* for appellees.

HARLAN, J.—

Article 93 of the Code of Public General Laws, title "Testamentary Law," contains among others the following sections:

"238. If an administrator shall believe that any person conceals any part of his decedent's estate, he may file a petition in the Orphans' Court of the county in which he obtained administration, alleging such concealment, and the Court shall compel an answer thereto on oath, and if satisfied, upon an examination of the whole case, that the party charged has concealed any part of the personal estate of the deceased, may order the delivery thereof to the administrator, and may enforce obedience to such order by attachment, imprisonment or sequestration of property."

"239. The provisions of the aforegoing section are extended to all cases where any person interested in any decedent's estate shall by bill or petition allege, that the administrator has concealed or has in his hands, and has omitted to return in the inventory or list of debts any part of his decedent's assets, and if the Court shall finally adjudge and decree in favor of the allegations of such petition or bill, in whole or in part, they shall order an additional inventory or list of debts, as the case may be, to be returned by the administrator and appraisement to be made accordingly to comprehend the assets omitted, and such additional inventory or list of debts shall have the same effect to all intents and purposes as any inventory or list of debts before returned, and the Court may compel obedience to said order by attachment and imprisonment and sequestration of property, and if the said administrator shall either before or after such process of attachment, imprisonment and sequestration, fail to comply with such order, his letters of administration may be revoked and the Court may direct his bond to be put in suit, and the assets ordered to be comprised in such additional inventory or list of debts shall be decreed and taken to be within the condition of said bond."

"240. If, upon the answer to any petition or bill filed under the provisions of the two preceding sections, either party shall require it, the Court shall cause an issue, or issues, to be made up and sent to the Circuit Court for the County, or the Superior Court of Baltimore City, the Court of Common Pleas or the Baltimore City Court, as the case may be, to be there tried and disposed of, as other issues from the Orphans' Court, and either party to such bill or petition may appeal to the

Circuit Court for the County or the Superior Court of Baltimore City."

These sections give to the Orphans' Court jurisdiction over two classes of cases: *The first*, under Section 238, *where an administrator alleges that any person conceals any part of his decedent's estate. The second*, under Sec. 240, *where any person interested in any decedent's estate alleges that the administrator has concealed, or has in his hands, or has omitted to return in the inventory or list of debts, any part of his decedent's assets.*

In the first class, the jurisdiction of the Court depends entirely upon concealment. Without concealment of the decedent's personal property being alleged, the Orphans' Court would be without jurisdiction to entertain the petition in the first instance, and without concealment being proven, it would be without jurisdiction "to order the delivery thereof to the administrator."

It was ruled in Taylor vs. Bruscup, 27 Md. 219, that secrecy is an essential element of the concealment meant by this section that something more than *the withholding of property* belonging to the estate is necessary. "It can scarcely be imagined," say the Court, "that the extraordinary power of requiring an answer upon oath, with the summary process of attachment, sequestration and commitment, were to be exercised by a Court of special limited jurisdiction in every case in which the administrator or executor *should allege a third person withheld property which belonged to the estate of the deceased.*" And following this case it was decided in Gibson vs. Cook, administrator, 62 Md. 256, where the answer of the third person to the administrator's petition alleging concealment, *admitted the possession* of the money claimed by the administrator and claimed it as his own property, that the pleadings raised an issue of title, not of *concealment*, and the Orphans' Court had properly decided "that under *such a state of facts* that Court had no jurisdiction, because it could not decide a question of title." But in the second class, where the administrator is respondent, the withholding of property belonging to the estate, by the latter, and his failing to return the same in the inventory or list of debts, is made a distinct source of jurisdiction the language is alternative. "Where any person interested * * *

shall allege that the administrator has concealed, *or has in his hands and has omitted to return in the inventory or list of debts any part of his decedent's assets.*" The grant of jurisdiction here is plain and unmistakable. The petitioner must allege either that the administrator has concealed or that he has in his hands and has omitted to return property of his decedent.

If these allegations are made in the petition the statute has been complied with. It is the truth of these allegations that is to be investigated.

There is no room for the contention that the mere withholding of property belonging to the estate, without secrecy, is not concealment and does not give a remedy in the Orphans' Court against the administrator, because the statute expressly says that it does. It was certainly competent for the Legislature to confer this jurisdiction upon the Orphans' Court, preserving the right of jury trial by providing for the framing issues to be sent to a Court of law, as has been done; and it seems to me impossible, to maintain successfully that the Orphans' Court cannot, under this section, decide the title to personal property in the possession of the administrator, alleged to be assets of the estate which he conceals or withholds. If the property involved does not belong to the estate there can be no withholding of it as against those whose sole interest in it arises out of their interest in the estate, and, on the other hand, if the property does belong to the estate and has been omitted from the inventory or list of debts, it has been withheld. The title of the property *is the vital question.* And while it was ruled, as above noted, under Section 238, that the Orphans' Court could not, as between the administrator and a third person decide the title to property, which the latter *admitted to be in his possession*, but claimed as his own, because there was no issue of *concealment*, the Court of Appeals has nowhere held that under Section 239, where the administrator is the respondent, and the petitioner is a person interested in the estate, the Orphans' Court is without jurisdiction to decide whether the property which is alleged to be withheld is property which should be included in the estate, or is property belonging to the administrator, or held by him in some other right, which

should not be included. On the contrary, that Court, in Whiting vs. Whiting, 64 Md. 157, pointed to this section as conferring ample power upon the Orphans' Court to determine whether an administrator owed money to the estate and had not returned the debt as he should have done. In the Whiting case one administrator had filed a bill in equity against his co-administrator, alleging that he was indebted to the estate in the sum of seven thousand dollars ($7,000), and had failed and refused to make return thereof to the Orphans' Court, and the bill was dismissed because the remedy was in the Orphans' Court and not in equity. "The Code, by Sections 225, 239 and 241 of Article 93, makes provision for proceeding against delinquent administrators or co-administrators in the Orphans' Court, and a resort to the remedy there provided would certainly be more expeditious and less expensive than a proceeding in equity." In determining whether the co-administrator owed money to the estate, which he should be compelled to return in the list of debts, what would the Orphans' Court do but decide a question of title? A debt is a *chose in action* and a *chose in action* is property, and the title to the *chose* or property, depends upon the existence of the debt. And in Stanley vs. Safe Deposit Company, 87 Md. 450, 453, the Court of Appeals, recognizing the undoubted truth "that the Orphans' Courts are tribunals of special limited jurisdiction," and "have no powers other than those conferred upon them by statute, and such as are incident to, and necessary for, the performance of the ones expressly given," held, that, where the jurisdiction of the Orphans' Court depends upon the existence of facts ("circumstances"), that Court has jurisdiction primary to determine whether those facts ("circumstances") exist. Plainly, where the petitioner alleges that property *belonging* to the estate is *withheld*, these facts are to be found by the Orphans' Court before it can exercise its power to order the property to be returned.

Section 239 was directly before the Court of Appeals in Hignutt, admr., vs. Cranor, 62 Md. 216, but the only question decided was that "in order to make out a case against an administrator under Section 239, it must be alleged and proved that he is the party concealing or omitting to return the property which he has in his *own* hands, or that he is *particeps criminis*, or actually in collusion with some other party by and through whom the concealment or possession and retention of the property is actually effected," and, therefore, a petition which alleged only "that the administrator in his inventory of cash on hand has failed to charge himself with two thousand dollars ($2,000) in money of which the said William P. Butler died possessed and which is retained by Margaret D. Butler, widow of the deceased," was obviously defective.

There is good reason for the difference in the language and scope of Sections 238 and 239, which I have endeavored to point out, for when a third person admits the possession of specific articles or money, and claims title, the ordinary remedies in a Court of law by replevin or assumpsit for money had and received, are open to the administrator, and are adequate, but a third person who is interested in the estate has no title which will enable him to maintain these remedies in a Court of law against an administrator.

The petition in the case before the Court on this appeal was filed on May 24th, 1898, by Mary E. Polk and Lucius C. Polk, her husband, and Gabriel Clark Polk vs. Helen A. Linthicum and Gabriel D. Clark, Jr., executors of the last will and testament of Gabriel D. Clark, late of Baltimore City, deceased, and Helen A. Linthicum and J. Charles Linthicum, her husband, and alleges that Gabriel D. Clark, at the time of his death, December 8th, 1896, was possessed of certain specified articles of personal property; that Helen A. Linthicum had taken possession of them, has concealed the same, and has the same in her hands, and has omitted to return them in the inventories; that the said Helen A. Linthicum on November 1st, 1896, came into possession of two thousand dollars ($2,000) that belonged to her then husband, and on November 9th, 1896, came into possession of three hundred dollars ($300) that belonged to him; that a considerable portion of these sums of money remained or came into possession of Helen A. Clark, now Linthicum, after the death of the testator, but she has omitted to return the said money either in any inventory or list of debts, but conceals and withholds the same. These allegations, if true, certainly

make a case under Section 239 of Article 93.

Gabriel D. Clark, Jr., one of the executors, answered the petition on June 6th, 1898; does not deny the averments of the petition, and submits to the passage of such order as the Court may seem proper.

Helen A. Linthicum, the other executor, and J. Charles Linthicum, her husband, on the same day, filed a joint answer, in which they deny "that any property belonging to the estate of Gabriel D. Clark, deceased, or any article mentioned in said paragraph, has ever been concealed by them, or either of them;" * * * "they deny that any silverware, clocks or jewelry in their possession and in said paragraph mentioned belongs to the estate of Gabriel D. Clark; they admit the possession of a few articles belonging to the estate," but justify their retention thereof by reason of Charles Linthicum having been told by the attorney of the other executor that "he had no objections" to his taking these articles at their appraised value, and Helen A. Linthicum "admits that she collected the two sums of money, aggregating $2,300, but avers that the said money was collected by her during the lifetime of said Gabriel D. Clark, at his request, upon orders signed by him, and that the same was strictly and satisfactorily accounted for by her to him, *and that the said Helen A. Linthicum does not, nor did she ever claim the said money as her own*, having accounted therefor to the said Gabriel D. Clark, who disposed of the same prior to his death."

Afterwards, on March 17, 1900, Helen A. Linthicum and J. Charles Linthicum, her husband, by leave of Court, filed an amended answer. In the third paragraph of this Helen A. Linthicum admits that she has in her possession certain jewelry, silverware, a small iron table, hall table and two chairs and clocks; also 'Tate's Chickens,' the oil painting mentioned in said paragraph, all of which at one time belonged to Gabriel D. Clark, deceased; but avers that long before his death they became her property and have ever since so continued, and were, therefore, properly omitted from the inventories filed in his estate," * * * "denies any concealment of them, or any of them;" * * * "claims title to the goods and chattels mentioned in the third para-

graph (of her answer), and denies the jurisdiction of the Court to decide as to the rights therein of the respective parties hereto, the matter involved being a question of title not of concealment, and the said Helen A. Linthicum and J. Charles Linthicum, her husband, say that as to the matters and things alleged in said petition as to them, or either of them, as individuals, * * * the Court has no jurisdiction." Helen A. Linthicum admits that she collected the two sums of money aggregating two thousand three hundred dollars ($2,300), but avers that said money was collected by her during the lifetime of Gabriel D. Clark, at his request, and was paid to him, and by him expended and disposed of in his lifetime.

She also filed, by leave of Court, a list: 1, of articles not inventoried, and to which she claims title; 2, of articles which she alleges were improperly inventoried; 3, of articles inventoried, which she asks leave to select on account of seventy-five dollars ($75), allowed her as widow under Article 93, Section 299; 4, of articles purchased by her at private sale from the executors by order of Court.

And, 5, of goods sold at public auction for the estate. A careful comparison of the two answers and these lists of articles with the petition, will disclose that while Mrs. Linthicum denies that any property belonging to the estate has been concealed, she does not admit nor deny the possession of some of the articles which she is charged with having omitted to return, nor does she set up any claim or title to them; and as to the two sums of money which the petition alleges "she collected during the testator's lifetime," and "a large part of which remained or came into her hands after his death," she distinctly disclaims any title to it, and puts her defense to this allegation upon the averment that these sums of money were paid to Mr. Clerk and disposed of by him during his life.

The petitioners, on March 22nd, 1900, filed a general joinder of issue of the matters alleged in the answer of the respondents, so far as the same deny or avoid the allegations of the petition.

On the same day Helen A. Linthicum and J. Charles Linthicum, her husband, moved the Court to dismiss the petition against them as individuals,

"because the Court *had* no jurisdiction over them, or either of them, in their individual capacity, or to pass any order in reference to them as such."

And on the 23rd day of March, 1900, the Orphans' Court, without hearing any proof or undertaking to determine the truth or falsehood of the respective allegations, passed an order that the petition be dismissed for want of jurisdiction, and that the petitioners and respondents pay their respective costs." In this action there was error. So far as J. Charles Linthicum was concerned, it seems to me he was not simply as husband of one of the executors a necessary or proper party to this statutory proceeding. The petition makes no allegations and asks no specific relief against him, and an order dismissing the petition as to him would have been unobjectionable.

But, if Mrs. Linthicum, as executrix, was concealing or withholding assets of the estate, it would be an unnecessary refinement to dismiss the petition against her as an individual and retain it against her as executrix. It is by reason of the fact that she is executrix that she can be called on to answer, but we cannot, after all, separate the executrix from the individual in her liability to be effected by process of the Court. If it should be necessary "to enforce obedience to such orders," as may be passed "by attachment, imprisonment or sequestration of property," a lady would derive small comfort from the thought that as an individual she was entitled to her personal freedom, but as executrix she was imprisoned under a commitment for contempt. If concealment were a necessary part of the issue under Section 239 of Article 93, and Mrs. Linthicum had admitted the possession of *all* the articles charged as being in her hands, and had claimed title thereto, then, under the authority of Taylor vs. Brunscup, 27 Md. 219, and Gibson vs. Cook, administrator, 62 Md. 256, the order of the Orphans' Court might be sustained, but, as we have already seen, she does not admit the possession, of *all* the specific articles and claim title, and as to the money she disclaims any title to that, and denies, by implication, that it came into her possession after Mr. Clark's death. As to such articles, as there is no claim of title, and as to the two sums of money, clearly the Orphans' Court had jurisdiction, subject to the right of the parties to have issues sent to a Court of law, to examine the truth of the petitioner's allegations. That there should be no room for doubt, Section 239 distinctly says: "If the Court shall finally adjudge and decree in favor of the allegations of such petitioner, *in whole or in part*, they shall order an additional inventory, etc."

But if I am right in my interpretation of Section 239, of Article 93, the jurisdiction of the Orphans' Court was not removed against the executors by the claim of title. *Concealment* not being an essential issue, the *withholding* of property belonging to the estate being alone required to be found, the Orphans' Court should even as to the articles as to which possession was admitted and the claim of title made, have entertained the petition, gone on to hear testimony and examine, subject to the right of the parties to have issues sent to a Court of law, the truth of the allegation of the one side that Mr. Clark was possessed of the said articles at the time of his death, and of the other that they belonged to Mrs. Clark at that time, in order that they might finally adjudge, whether the respondent, Mrs. Linthicum, "has in *her* hands and has omitted to return any part of *her* decedent's assets," and if they shall find that she has, order an additional inventory or list of debts, as the case may be, to be returned. I am, therefore, of opinion, that the order of the Orphans' Court should be reversed and the cause be remanded for further proceedings in accordance with this opinion. An order will be signed accordingly. The costs of this appeal will be placed upon Mrs. Linthicum.