MARY J. BALDWIN, ADMINISTRATRIX, *v.* LAURA M. HOPKINS ET AL.

[Nos. 21-23, January Term, 1937.]

*Decided April 9th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Edwin H. W. Harlan,* for the appellant.

*A. Freeborn Brown* and *John L. G. Lee,* with whom was *J. Wilmer Cronin* on the brief, for the appellees.

MITCHELL, J., delivered the opinion of the Court.

The record in this case presents three appeals from rulings of the Orphans' Court of Harford County, growing out of the administration of the estate of Joseph R. Baldwin, who died on the 27th day of February, in the year 1936. His will was filed for probate in the Orphans' Court of said county on the day after his decease; almost immediately thereafter, notice of objection to the probate

of the same was filed; and this was followed, on March 2nd, by a caveat. On March 10th the answer of Mary J. Baldwin and Joseph R. Baldwin, Jr., the executors named in the purported will, was filed; and on the same date the said Mary J. Baldwin, widow of the testator, was appointed administratrix *pendente lite* upon the estate.

Since the appointment of the administratrix *pendente lite,* the estate of the deceased has been involved in ceaseless controversy; and this is the second time this court has been called upon to review actions of the Orphans' Court in the course of its administration; the first appeal having been heretofore disposed of in this court at the October Term, 1936, whereby an order of the Orphans' Court, purporting to appoint Frederick B. Baldwin, one of the appellees in this case, a co-administrator *pendente lite* upon the estate, was reversed. 171 Md. 97, 187 A. 884.

Independently of the proceeding to have a co-administrator appointed, the appellees, on the 19th of May, filed a petition in which they set forth, in substance: (a) That as children of the deceased, they were vitally interested in the proper administration of the estate; (b) the appointment of Mary J. Baldwin as administratrix *pendente lite,* without notice to the petitioners; (c) that the said administratrix had caused to be filed in the Orphans' Court separate inventories of the real and personal property pertaining to the estate; (d) that the same had been examined by the petitioners, and upon the basis of such examination, they then alleged that the said administratrix had concealed or omitted to return in the inventories a large part of the decedent's estate, and, further, that she was considerably indebted to said estate. The prayers of the petition were: (1) That its subject-matter be considered a plenary proceeding; (2) that the petitioners be given opportunity at an early date to examine under oath the administratrix *pendente lite,* to the end that the court might consider: (a) Whether under the alleged facts, the administratrix should be further retained as such; (b) whether she was largely indebted

to the estate individually; (c) whether she had concealed assets or omitted to return, in the inventories filed in the case, any part of the decedent's estate; (d) requiring the administratrix to make proper accounting to the court, both as administratrix and individually.

Upon the aforegoing petition, the court, on the same day, passed an order directing the administratrix to show cause, on or before the 25th of May, why she should not appear in the court on the 2nd of June for the purpose of examination under oath in reference to all matters relative to the personal estate of the deceased; and further ordering that a copy of the petition and order of the court thereon be served on the administratrix on or before May 25th. A *non est* was returned on this order.

On the 26th of May a second petition was filed by the same petitioners, alleging the specific omission of the administratrix to return, in the inventories theretofore filed, a certain interest in real estate alleged to have belonged to the deceased and specifically mentioning numerous personal chattels alleged to have been omitted in the inventory of the personal property pertaining to the estate, including cash on hand, approximately $76,000 in cash claimed to have been received by the administratrix from rents prior to the death of the deceased, and also cash representing the proceeds of stocks and bonds due the estate, which had not been accounted for in the inventory. The latter petition further set forth the return of *non est* as to the former petition, and alleged that the administratrix, for the purpose of evading process, had removed from the State of Maryland to Buffalo, N. Y., carrying with her a large quantity of said personal estate. It further alleged neglect of duty and unfaithful conduct on the part of the administratrix, resulting in loss to the estate; and prayed that a co-administrator *pendente lite*, to take charge of and preserve the estate, be appointed, and that a copy of this petition and order be served upon the administratrix or her counsel of record, or, upon failing to secure such service, by order of publication directing the administratrix to appear in

said court on some day to be named therein, to show cause why she should not immediately be removed as administratrix, and also be examined by the petitioners under oath with regard to the subject-matter of the petition, provided, however, that the service of such notice as hereinbefore set forth be made on or before the 27th of May.

Upon the latter petition, the Orphans' Court, on the 26th day of May, passed an order directing that a copy of the petition and said order be served on the administratrix, and if she could not be found, upon her counsel of record, on or before the 27th of May, directing her to show cause, on or before June 9th, why the relief prayed for in the petition should not be granted; with the further provision for the publication of the order, in the absence of personal service. Service of this petition and order was admitted by counsel for the administratrix, and a full and particular answer specifically denying the allegations of the petitioners was promptly filed.

On August 20th the Orphans' Court passed an order directing that issues be sent to the Circuit Court for Harford County, to be tried by a jury, which issues, briefly, were as follows: (a) Whether at the time of his death the testator owned any of the chattels other than those listed in the inventory of the personal estate alleged in the second petition to have been omitted; and if so, which articles belonging to him were omitted; (b) whether the administratrix was indebted at the time of the death of the decedent, by reason of rents collected by her prior to his death, for which she had failed to account; and if so, in what amount; (c) whether she was indebted to the estate for the proceeds of securities sold by her, for which she had failed to account; and if so, in what amount; (d) whether the deceased at the time of his death was possessed of any interest in a certain merchandise business conducted in the City of Buffalo, for which she had failed to account; and if so, in what amount. This order further provided that the issues be transmitted for trial, without prejudice to any

party's right to request additional issues after the return of said issues from the Circuit Court; provided, however, that such additional issues be limited to matter then in dispute and not embraced in the issues.

Following the passage of the aforegoing order, the petitioners filed a supplemental petition in the Orphans' Court, asking that, in addition to the relief prayed in the petitions of May 19th and May 26th, the order of the court of March 10th, appointing the administratrix *pendente lite,* be revoked, for the reason that no notice had been given the petitioners prior to said appointment. To this latter petition an answer was filed, in which it was submitted that no appeal had been taken from the original order of appointment of the administratrix within the time prescribed by statute; and that the petitioners were precluded at that time from attacking the appointment of the administratrix by way of amendment to their petitions of May 19th and May 26th, because upon said petitions issues had then been framed and sent to the Circuit Court for trial.

The Orphans' Court having passed an order setting the several matters submitted by the pleadings for hearing on October 20th, the administratrix thereupon filed exceptions to this order, upon the ground that the matters proposed to be considered at said hearing had been incorporated in the issues which had then been sent to the Circuit Court, and that, until said issues were determined, there was nothing properly before the Orphans' Court. The exceptions further submitted that any issues of fact not embraced in the issues then pending in the Circuit Court be framed as additional issues and sent to the Circuit Court for trial, to the end that all facts in dispute might be determined by a jury; and prayed that meanwhile the hearing, fixed for October 20th, be continued until such time as all issues were determined in the Circuit Court.

On October 20th the Orphans' Court overruled the exceptions, and, considering the petitions of May 19th and May 26th, and the answer of the administratrix

thereto, ordered that the said administratrix be refused any further issues on said petitions and answer, and proceeded with the hearing. The first appeal of the administratrix in this record is from this latter order.

It appears from the record that, after formally objecting to the hearing, counsel for the administratrix appeared and participated therein by cross-examining witnesses for the petitioners on the first day of said hearing, but nevertheless, on the second day of the hearing, he again appeared and notified the court that the administratrix declined to take any further part therein, for the same reasons as set forth in the exceptions and the formal objection; and for the further reason that meanwhile an appeal has been noted as hereinbefore indicated.

At this stage of the hearing, the Orphans' Court, on October 28th, passed an order directing the administratrix to appear in person before the court two days later, and then and there be examined under oath by the petitioners or their attorneys, or else be subject to an order of the court vacating and annulling her appointment as administratrix *pendente lite;* provided, nevertheless, that a copy of the order be served on the attorney of record in the case; which service was accepted by counsel for the administratrix, whose appeal from said order is the second found in this record.

On the 30th day of October, the date on which the postponed hearing was fixed, the following order, forming the basis of the third appeal in this record, was passed: "From the matters and facts stated in the various petitions filed in these proceedings asking that this Court remove Mrs. Mary J. Baldwin as administrator *pendente lite* in the above entitled case under order of this Court dated March 10, 1936, and its further order dated October 28, 1936, requiring the said Mary J. Baldwin, administratrix as aforesaid, to appear in this Court and be examined under oath as to the matters and facts set forth in the above mentioned petition, it appearing to the Court that the said Mary J. Baldwin or her attorney had notice of said order of October 28, 1936, the

Court hearing the evidence and considering the matters and facts stated in said petition, and having duly considered the same, is of the opinion that the letters of administration granted to the said Mary J. Baldwin to act *pendente lite* in the above entitled estate, dated March 10, 1936, should be revoked. It is thereupon ordered by the Orphans' Court of Harford County this 30th day of October in the year 1936, that the said letters of administration granted to the said Mary J. Baldwin as aforesaid, be and they are hereby revoked. And it is further ordered that Frederick B. Baldwin, who has heretofore been acting as co-administrator in this estate, shall from this date on, act as administrator *pendente lite*."

It may be here noted that, by a previous order, the Orphans' Court had specifically rejected the petitioners' contention that the appointment of the administratrix should be vacated because they had received no notice prior thereto.

At the expense of prolonging this opinion, we have endeavored to detail the status of the record, as of the dates of the successive appeals; and it is obvious, from what has been shown, that the proceedings are complicated by virtue of the diligence of counsel in the Orphans' Court, at a time when an appeal was pending in this court, and likewise issues of fact were pending in the Circuit Court for Harford County.

While there are no provisions in our statutes defining the powers of an administrator *pendente lite*, or establishing particular and exceptional rules for the discharge of his duties, it has been decided by this court that such an administrator is subject to the same general rules as control general administrators. *Baldwin v. Mitchell*, 86 Md. 379, 38 A. 775; *Warfield v. Valentine*, 130 Md. 587, 101 A. 543. Section 243 of article 93 of the Code (Supp. 1935) clothes the orphans' courts of this state with full power, among other things, to grant letters of administration, direct the conduct and accounting, secure the rights of legatees, and administer justice in all matters relating to the affairs of deceased persons; and by section 269

of article 93 of the Code, the said courts are vested with power *ex officio* to order any administrator, acting under its authority, who appears to be in default in respect to the rendering of an inventory or the fulfillment of any duty in said courts, to be summoned to appear before the court and fulfill such duty, on pain of revocation of letters of administration. It is further provided by said last mentioned section that if the person so appearing to be in default does not appear in court, in response to a letter addressed to him, the court may order him to be summoned by the sheriff. Upon his appearing, it may pass such order as may be just in the premises; and upon his not appearing, after having been duly summoned, the court may revoke his letters of administration, and may make such order or appointment as the laws of this state and justice may require. By section 263 of article 93, the said courts, in all cases of controversy therein, upon the application of either party, may direct plenary proceedings, by bill or petition, to which there shall be an answer on oath; and in section 264 it is provided: "On such plenary proceeding, all the depositions shall be taken in writing and recorded, and, if either party require it, the court shall direct an issue or issues to be made up and sent to any court of law convenient for trying the same, and the issues shall be tried in the said court of law as soon as convenient, * * * and the power of the court of law and the proceedings thereto relative shall be as directed by law respecting the trial of issues, and the orphans' court shall give judgment or decree upon the bill and answer and depositions or the finding of the jury."

In addition to the several sections to which reference has hereinbefore been made, section 252 of the same article provides that, if an administrator shall believe that any person conceals any part of his decedent's estate, he may file a petition in the orphans' court alleging such concealment, in which event the court shall compel an answer under oath, and if satisfied upon examination of the whole case that the party charged has concealed as-

sets, may order delivery thereof to the administrator, and is empowered to enforce its order. The provisions of the latter section are extended by section 253 to all cases where any person interested in a decedent's estate shall by bill or petition allege that the administrator has concealed, or has in his hands and has omitted to return in the inventory or list of debts, any part of his decedent's estate; and if the court shall finally adjudge and decree in favor of the allegations of such petition or bill in whole or in part, they shall order an additional inventory to be returned by the administrator; with similar power to the court to compel obedience to its order; and with the further provision that if the administrator shall fail to comply with such order, his letters of administration may be revoked. Then follows section 254: "If, upon the answer to any petition or bill filed under the provisions of the two preceding sections, either party shall require it, the court shall cause an issue or issues to be made up and sent to the circuit court for the county * * * to be there tried and disposed of as other issues from the orphans' court; *and either party to such bill or petition may appeal to the circuit court for the county.*"

It will thus be observed that a special right of appeal to the circuit court is contemplated as to matters of controversy arising in the orphans' court under the provisions of sections 252, 253, and 254 only; in all other matters of controversy the appeal is direct from the orphans' court to this court, except as provided by section 69 of article 5 of the Code.

Applying this status of the law to the exceedingly mixed matters in controversy in the instant case, the question with which we are confronted at the outset is whether any of the appeals in this record are properly before us. It is obvious that the basic purpose of the petitioners throughout the conduct of the proceedings in the Orphans' Court has been to remove the appellant as administratrix *pendente lite,* and that the alleged basis of justification for such removal, in the last analysis, was her concealment of assets and her omission to return a

proper inventory thereof. Had they proceeded as clearly indicated by section 253, we would have no hesitancy in dismissing the appeal in No. 23, because by the unambiguous direction of section 254, such appeal could only be to the Circuit Court. *McAvoy v. Renehan,* 116 Md. 333, 81 A. 673; *Linthicum v. Polk,* 93 Md. 84, 91, 48 A. 842; *Stonesifer v. Shriver,* 100 Md. 24, 27, 59 A. 139, 140; *Worthington v. Herron,* 39 Md. 145. In the case last cited it is said: "If the right of appeal had not been expressly given to the Circuit Court by Art. 93, sec. 240 [now 254], then the broad and unqualified language of Art. 5, sec. 39 [now 64], would have afforded the right of appeal to this court; but, as we have seen, the statute conferring the new jurisdiction having provided the particular mode of appeal, that mode is a negation of any other, and must be taken to be exclusive." The difficulty, however, arises out of the fact that the appellees, by their original petition, in which their only apparent grievance at that time was the concealment of assets and the omission to make a proper return thereof in the inventory by the administratrix, prayed plenary proceedings, and without awaiting the determination of the issues then sought to be raised, followed their petition with a supplemental petition, which, in addition to the alleged concealment first charged, embraced a prayer for the appointment of a co-administrator *pendente lite.* Meanwhile, they participated in proceedings before the Orphans' Court, whereby, before any testimony in support of the allegations of their several petitions was taken, and before hearing in said court, issues of fact as to the concealment of assets and the omission to properly inventory the same, were sent to the Circuit Court for trial by a jury. The order of the court transmitting these issues especially provided that the same were transmitted for trial without prejudice to any party's right to request additional issues after the return of the issues from the Circuit Court, provided such issues be limited to matters then in dispute.

It would seem, from this state of the pleadings and

the fact that the result of the findings of the jury on the issues then pending in the Circuit Court would have important bearing on the retention of the administratrix *pendente lite* or the revocation of her letters, that the proceedings need not have been further confused until at least the issues were duly returned by the Circuit Court. But notwithstanding the anomalous situation of an appeal then pending in this court, and the outstanding issues referred to, we find in the record a third petition, by virtue of which the appellees sought to have the letters of the administratrix revoked; and through a proceeding which was practically conducted *ex parte*, we have before us appeals which are not solely concerned with the concealment of assets and the failure to properly inventory the same. To the contrary, the first appeal is from an order overruling exceptions to a previous order of the Orphans' Court refusing additional issues of fact to be sent to the Circuit Court for trial, and ordering that the hearing proceed in pursuance of the order to which the exceptions were taken; the third appeal being taken from the order of the court revoking the letters of the administratrix. It therefore is apparent that the proceedings under the original petition, designed, as we have said, to deal with the concealment of assets and the failure to inventory, were, under subsequent petitions, made to combine subject-matter of which the Circuit Court alone has appellate jurisdiction with independent matter of which it has no jurisdiction; and the orders of the Orphans' Court now before us deal with and determine both of these subject-matters. In *Stonesifer v. Shriver, supra,* after discussing a situation somewhat analogous to the instant case, it is said: "The appellant cannot, by this confusing and misjoinder of distinct matters in one petition, and in one order, confer jurisdiction upon the court as to that one of the subjects over which jurisdiction is not given by section 239 [now 253]; nor can either party be in this manner deprived of his appeal as to the matter improperly included in said petition, if it could be treated as filed under section 239 [now 253]."

The order appealed from in No. 21 overrules exceptions of the administratrix to an order of the Orphans' Court setting the several petitions and answer for a hearing before the court and refusing the administratrix further issues directed to the Circuit Court. The exceptions which were overruled by this order distinctly alleged, as a reason for the postponement of the hearing, that all of the matters alleged in the petitions and denied in the answer, at that stage of the proceedings, had then been incorporated into issues which had been sent to the Circuit Court; and that, pending the determination of said issues, there was nothing then properly before the Orphans' Court because the decision of the Orphans' Court upon said petitions and answer was dependent upon the determination of the issues. It was further set forth in the exceptions that if, in the discretion of the Orphans' Court, issues of facts had not been incorporated in the former issues, then and in said event the exceptant demanded that such additional issues be framed and sent to the Circuit Court for trial, to the end that all facts in dispute between the parties might be determined by a jury. In *Snook v. Zentmyer*, 90 Md. 705, 45 A. 1006, it is said: "The proper exercise of the powers vested in the orphans' courts to remove administrators and executors for failure to perform, or for violating their duties, may oftentimes be productive of much good in the administration of estates, but an improvident use of such powers not only does great injustice to the parties directly affected, but is calculated to do harm in other ways." In that case one of the executrices of John Munday had refused to obey a previous order of the Orphans' Court to sell real estate belonging to her decedent, pending the existence of a life estate therein. While an appeal from the order directing the sale of the real estate was pending in this court, the co-executrix of the disagreeing executrix filed a petition for the removal of the latter, because of her refusal to obey the previous order of the court. Upon appeal from the order removing the recalcitrant executrix, this court, in revers-

ing the latter order, said: "While that appeal was pending, further proceedings based on the order appealed from should have been stayed." By analogy, we can see no reason why the proceedings should not have been stayed in the instant case, in which they were awaiting the determination of a jury in another court. Section 68 of article 5 of the Code provides: "An appeal from the orphans' court shall not stay any proceedings therein which may with propriety be carried on before the appeal is decided, if the said orphans' court can provide for the conforming to the decision of the court of appeals, whether the said decision may eventually be for or against the appellant." It is obvious, from the very nature of the proceedings in this case, that the Orphans' Court could not proceed while the issues of fact were outstanding, for the evident reason that, if the determination of the issues establish the facts in favor of the faithful conduct of the administratrix in the execution of her trust, the Orphans' Court will then find itself in the position of having acted in direct conflict with the findings of the jury, which findings are binding upon the court. In other words, as was said in *Pegg v. Warford,* 4 Md. 385: "When a question is once submitted, so far as it is concerned, the functions of the orphans' court are suspended until the finding of the jury be certified, and when that is done, it has no discretion in regard to it, but is imperatively required to enter up judgment in conformity thereto." *Price v. Taylor,* 21 Md. 356.

The appeals before us in Nos. 21 and 23 are cases in which the parties did not elect to try their issues of fact before the Orphans' Court, but in which they had previously elected that the same be tried by a jury; and the Orphans' Court, in accordance with this submission, had passed its order sending the cases to the Circuit Court for trial. They are therefore clearly distinguishable from the case of *Maynadier v. Armstrong,* 98 Md. 175, 56 A. 357, in which latter case it was sought to frame issues and send them to the circuit court, after the parties had elected to try the issues before the orphans' court, and

during the progress of the trial in said court. What we have said with reference to the appeal in No. 21, we are of the opinion applies with equal force to the proceedings in No. 23, resulting in the arbitrary removal of the administratrix by the Orphans' Court, based upon evidence taken *ex parte* before it, which evidence was similar to that upon which the issues were founded, and related to the same general situation. It follows, therefore, that the order of October 20th, 1936, and the order of October 30th, 1936, will be reversed, and because it is apparent that the order of October 28th, 1936, was not a final order, the appeal from that order will be dismissed.

> *Orders of October 20th, 1936, and October 30th, 1936, reversed; and appeal from the order of October 28th, 1936, dismissed; with costs to the appellant.*